# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br>    vs.<br>FRANCISCO JAVIER ARELLANO-FELIX,<br><br>                            Defendant. | CASE NO. 06cr2646-LAB<br><br>**ORDER DENYING FURTHER REDUCTION OF SENTENCE** |

      Beginning around 2002, Francisco Javier Arellano Felix took over as leader of the notorious Arellano-Felix drug cartel ("AFO") that had operated for several decades along the border between Tijuana and San Diego. The AFO was "one of the biggest and most violent criminal groups in Mexico," Steller, Tim (15 April 1998) *"Mexican drug runners may have used C-130 from Arizona,"* The Arizona Daily Star (April 15, 1998), engaging in drug smuggling, extortion, kidnapping, public corruption, and murder.  Suffice it to say, the activities of the cartel damaged or destroyed the lives of thousands of people on both sides of the border. The 2007 arrests of Javier Arellano and many of his lieutenants stripped out the central leadership and caused the cartel to unravel.

      This Court sentenced Mr. Arellano to life in prison in 2007 for his role in overseeing and authorizing the activities of the AFO. Within a year after that sentence was imposed, the United States filed a motion under Rule 35(b)(1) of the Federal Rules of Criminal Procedure

to modify and reduce the defendant's sentence. But the government didn't want the Court to act on its motion immediately; instead, prosecutors asked the Court to seal the motion and hold it in abeyance. The Court obliged their request.

Six years later, on November 1, 2014, prosecutors filed a motion to unseal the Rule 35(b) motion, and to reduce Mr. Arellano's sentence from life in prison to a term of 282 months. The motion was supported by a declaration from an experienced prosecutor who outlined Mr. Arellano's extensive post-sentencing cooperation with law enforcement and recommended that his sentence be reduced. Deferring to the prosecutor's great familiarity with Mr. Arellano's post-sentencing cooperation and to his judgment that the information that the defendant provided proved to be very useful to the government, on November 14, 2014 the Court granted the motion and reduced the defendant's sentence from life imprisonment to 282 months.

Now before the Court is a motion filed by Mark Adams, Mr. Arellano's able criminal defense counsel, who has represented him since shortly after his arrest. The motion asks the Court to grant a further reduction of Mr. Arellano's sentence from 282 months to 235 months. The gist of the request is that the government was too stingy in rewarding Mr. Arellano for the information that he provided. Without revealing confidential material that could compromise ongoing investigations, Mr. Adams points out that Mr. Arellano met with federal law enforcement agents on 25 occasions over a five-year period. Mr. Adams attended some of the meetings, which took place at various locations throughout the United States and often lasted for days at a time. Mr. Adams represents that at all times Mr. Arellano provided truthful, bona fide information on a variety of subjects that were of interest to law enforcement. During one debriefing session, Mr. Adams heard an interrogating agent tell Mr. Arellano that the information he was providing was like "a dream come true," and that Mr. Arellano would be duly rewarded.

Mr. Adams also relates that since Mr. Arellano's arrest he has been continuously held in segregated confinement away from other prisoners. During most of this time, he has been locked up 23 hours per day. For his safety, and to preserve the confidentiality of the

cooperation briefings, government officials have repeatedly transferred Mr. Arellano between federal prisons in the United States. As a consequence, he has had less freedom than other inmates within the prison system, less opportunity to participate in prison-sponsored programs, and fewer visits with his family.

A preliminary question is whether under Rule 35(b) Mr. Arellano should have any say in the extent of his sentence reduction? The Ninth Circuit hasn't directly addressed whether a defendant has the right to be heard before the court rules on a Rule 35(b) motion, but it has identified two rules pertaining to the process that may be pertinent. First, a court has no authority to grant Rule 35 relief unless the government moves for a reduction of sentence, which it has done here. *United States v. Tadio*, 663 F.3d 1042, 1052 (9th Cir. 2011). Second, a court is not permitted to treat a Rule 35 motion as a plenary or *de novo* resentencing proceeding, *id.* at 1055, because courts "generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillion v. United States*, __ U.S.__, 130 S.Ct. 2683, 2687 (2010) (quoting 18 U.S.C. §352(c)). It might be argued that, in combination, these rules authorize a district court to rule summarily on a government's Rule 35(b) motion without seeking or permitting input from the defendant.

On the other hand, while Rule 35(b) authorizes the government to recommend a reduction of a defendant's sentence based on his post-sentencing cooperation, the Ninth Circuit has emphasized that a district court must rely on *its own evaluation* of the significance and usefulness of the defendant's cooperation, taking into consideration the government's recommendation. *United States v. Ressam*, 593 F.3d 1095, 1125 (9th Cir. 2010) *superseded by United States v. Ressam*, 679 F.3d 1069 (9th Cir. 2012) (en banc). In other words, the court's role in the Rule 35 process is to decide whether to accept the Government's recommendation and, if so, the magnitude of departure as a function of the degree and nature of the cooperation. *Tadio*, 663 F.3d at 1048. So, assuming a court finds a defendant has rendered substantial assistance, it can order a greater reduction of sentence than that requested by the government. Although it seems unlikely, the Court acknowledges the
///

possibility that the extent of a sentence reduction predicated on a defendant's post-sentencing cooperation could be influenced by input from a defendant or from his counsel.

Additionally, assuming that the Court agrees that Mr. Arellano has provided substantial assistance, *Tadio* permits the Court to consider any relevant non-assistance factors under 18 U.S.C. § 3553(a) before deciding the extent of the sentence reduction. *Id.* at 1043, 1055. To be clear, there is no requirement for a court to consider non-assistance factors. But a court may choose to balance the defendant's assistance with relevant non-assistance factors, and may reduce a cooperating defendant's sentence more than, less than, or equal to what the prosecutor has recommended, or to what the defendant's assistance, considered alone, would warrant. *Id.* at 1055. The Court is inclined to consider relevant § 3553(a) factors in this case, and Mr. Adams relies on several such non-assistance § 3553(a) factors to press his case for a greater reduction of Mr. Arellano's sentence. It is intuitive that a defendant may have a better sense than the government of the impact that cooperating has had on him and his family, so this consideration also weighs in favor of recognizing Mr. Arellano's right to be heard.

In *United States v. Gangi*, 45 F.3d 28, 31-32 (2nd Cir. 1995), the Second Circuit held that a defendant has a due process right to respond to a Rule 35(b) motion and to advocate for a greater reduction of sentence, although no formal or evidentiary hearing is required. *Gangi* points out that Rule 35 is the post-sentence counterpart to § 5K1.1 of the U.S. Sentencing Guidelines (Guidelines), which permits a court to reduce a defendant's sentence for *presentence* substantial assistance. It is common practice in the Southern District of California for a defendant to be served with the government's § 5K1.1 motion, and to have an opportunity to comment. Moreover, the Ninth Circuit has held that a defendant has the right to challenge the government's refusal to seek a downward departure under § 5K1.1 – including, at least implicitly, the government's decision to ask for a skimpy downward departure – on grounds of either impermissible motive or breach of the plea agreement. *United States v. Treleaven*, 35 F.3d 458, 461 (9th Cir. 1994). Arellano does not allege that the government scaled back its Rule 35(b) recommendation based on an impermissible

motive. And his plea agreement did not have a provision requiring – or even contemplating – that the government would bring either a § 5K1.1 or a Rule 35(b) motion. Nonetheless, the Court finds *Gandi* persuasive, and also finds that input from the defendant may help the Court assess non-assistance factors under § 3553(a).

Finally, the Court is mindful that no review is permitted of its ruling on a Rule 35(b) motion, as long as the decision to reduce or not reduce the defendant's sentence is not "in violation of law." *Tadio*, 663 F.3d at 1045-46; *see also United States v. Pedroza*, 355 F.3d 1189, 1190-91 (9th Cir. 2004) (per curiam) (no jurisdiction under 18 U.S.C. § 3742 to review defendants claim that district court "abused its discretion by failing to reduce his offense level, and consequently his sentence, to a degree that he believes properly reflects the assistance he provided to the government"); *United States v. Doe*, 351 F.3d 929, 932 (9th Cir. 2003) (same)*; United States v. Arishi*, 54 F.3d 596, 597-98 (9th Cir. 1995) (same). For this additional reason, the Court believes that its assessment of whether the government's sentence reduction recommendation went far enough will be better served by permitting the defendant to comment and advocate on the issue. The Court will therefore entertain the defendant's motion.

In reducing Mr. Arellano's sentence to 282 months as recommended by the United States, the Court concluded that he provided post-sentencing substantial assistance.  The remaining questions are: (1) whether a greater reduction in the defendant's sentence for substantial assistance is warranted; and (2) whether the Court should further reduce the sentence based on non-assistance factors (such as Mr. Arellano's conditions of confinement). Section 5K1.1 lists five factors that are relevant to the first question: (1) the court's own evaluation of the significance and usefulness of the defendant's assistance (taking into consideration the government's evaluation); (2) the truthfulness, completeness, and reliability of any information provided; (3) the nature and extent of the assistance; (4) any injury or risk to the defendant or his family as a result of his cooperation; and (5) the timeliness of the defendant's assistance.

/ / /

Having reviewed both the Government's Rule 35(b) motion and the defendant's memorandum supporting a further reduction of sentence, the Court has no doubt that Mr. Arellano provided substantial and significant information that helped the government identify and charge other large scale drug traffickers and corrupt public officials in this country and in Mexico. He also provided law enforcement with useful insight and information regarding the structure and methods of drug cartels operating in Mexico and along the southwest border of the United States. And, he agreed to testify against numerous drug traffickers and corrupt officials who were identified and arrested by law enforcement based on information – including critical documentary evidence – that Mr. Arellano furnished.

The government and the defendant have represented, and the Courts finds, that Mr. Arellano's information was at all times truthful, complete, and reliable. The Court also finds, based on representations in the defense memorandum, that Mr. Arellano's cooperation was extensive, diligent, and even exhausting at times. He cooperated consistently from the time of his arrest and continuing on for at least five years. All of these considerations have been either explicitly or implicitly acknowledged by the government prosecutors when they recommended a 40% reduction of Mr. Arellano's original sentence of life without parole (470 months - 40% = 282 months).[1]

In granting the government's motion, the Court deferred to the government's assessment of the value of Mr. Arellano's cooperation, and followed the prosecutors' recommendation as to the extent of the sentence reduction due. There were practical reasons for this. Because prosecutors work closely with law enforcement agents who are on the front lines of the drug war, they are able to acquire a great amount of information, insight, and knowledge that helps them evaluate cooperation and assess its value. In contrast, judges – who are not on the front lines – are much more likely to form impressions about the

///

---

[1] The U.S. Sentencing Commission assigns a value of 470 months (39 years and two months) to sentences of life imprisonment for any statistical analysis in which a term of months is required. *See* U.S. SENT. COMM'N., 2013 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS S-170 (2014). This sentence length is consistent with the average life expectancy of federal criminal offenders. *Id.*

significance and usefulness of cooperation from the accounts they get from others rather than from first-hand experience.

Mr. Arellano has also offered his general assessment of the value of the information he provided (highlighted by excited snippets uttered by his interrogators), but the Court places less weight on his assessment. The Ninth Circuit has recognized that neither the defendant nor his counsel will ordinarily have comprehensive enough information (or particular competence) to assess the value of the information that a defendant provides. This is because neither the defendant nor defense counsel are in a position to really know how useful information is to law enforcement and prosecutors because both are even further removed from the evaluation process:

> More broadly, [the defendant] and his counsel [are] in no position to evaluate the effects of and benefits from his cooperation. Notably, they [cannot] know what the government already [knows] or would have been able to learn from other sources. That is why the Guidelines expressly require district courts to give substantial weight to the evaluation by the government. It is the government that is in the position to know the effects of defendants' provided information . . . .

*United States v. Ressam*, 679 F.3d at 1092-93.

For these reasons, it makes sense for the Court to rely primarily on the prosecutor's assessment of the extent and value of the defendant's cooperation and on his recommendation of what the cooperation is worth. The Court therefore adheres to the view that a 40% reduction of Mr. Arellano's original sentence – a reduction of 188 months – was sufficient to reward him for his post-sentence substantial assistance.

On the question whether a further reduction is warranted based on non-assistance factors, the Court accepts Mr. Adams' representation that Mr. Arellano's cooperation has placed him and his family in danger, has limited his freedom within the federal prison system, has hampered his ability to visit with his family, and has disqualified him from participating in some prison-sponsored programs. There's no doubt that these factors *could* support a decision to further reduce Mr. Arellano's sentence. But the Court must consider these adverse consequences of incarceration in conjunction with the reasons that Mr. Arellano was confined to prison in the first place. *Tadio*, 663 F.3d at 1053, 1055 (Rule 35 balancing of

§ 3553(a) factors should be performed against the backdrop of a defendant's original sentence).

Here, the starting point is the mandatory life imprisonment sentence that the Court imposed in 2007. At the time, the Court believed that sentence to be fully justified. Mr. Arellano had been involved with the AFO since 1991. For decades, the AFO's principal business had been importing hundreds of tons of cocaine and marijuana into the United States from Mexico. While the exact amount of money generated by the AFO was unknown, it was reliably estimated to be in the hundreds of millions of dollars. By 2002, Francisco Javier Arellano-Felix had become the head of the AFO. As such, he was the primary decision maker for the cartel, and he controlled the hierarchy of lieutenants and bosses who carried out the cartel's illegal activities. Under his supervision, AFO members engaged not just in drug trafficking, but in murder, kidnapping, torture, assault, extortion, firearms trafficking, bribery and public corruption. Particularly egregious is that by the defendant's own admission in his plea agreement, he personally murdered, participated in the murders of, and commissioned the murders of numerous people. His victims included informants (ironically, like himself), potential witnesses, and law enforcement officers.

Section 3553(a)(1) directs courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." By any measure, Mr. Arellano's offenses were abominable – evincing a lack of conscience, extreme human cruelty, and a malignant heart. Putting aside that the U.S. Code mandates a life sentence for anyone who pleads guilty to engaging in a Continuing Criminal Enterprise, 21 U.S.C. § 848(b), as Mr. Arellano did here, the original sentence that the Court imposed in this case was proportionate to the harm done by him and by the AFO. The imposition of a life sentence without parole reflected the seriousness of his offenses, fit the crimes as well as the offender, and provided just punishment. *See* § 3553(a)(2)(A).

A life sentence also guaranteed specific deterrence. Keeping Mr. Arellano behind bars for the rest of his life would help to ensure that the AFO would not be resurrected under his leadership, and that he would never again be in the position to use his experience to direct

a criminal enterprise responsible for so much misery and human suffering. *See* § 3553(a)(2)(B). A life sentence, in turn, would protect the public from further crimes committed by the defendant and those he otherwise might supervise and control. *See* § 3553(a)(2)(C).

Balancing these factors against the hardships of prison life that Mr. Arellano has experienced and will continue to experience, the Court is unpersuaded that any additional reduction of his sentence is warranted. This is to say that, in the Court's view, Mr. Arellano's culpability for the many wicked consequences of his crimes far outweighs any concern that the Court may have for the hardships of prison life. The famous country singer, Merle Haggard, once lamented "And the joint [is] a bad place to be." Haggard, Merle. "Are the Good Times Really Over." *Big City*. Epic, 1981. Album. Haggard was right, and the Court doesn't doubt that prison conditions today aren't much better than when he sang about them. But the aphorism "Let the punishment fit the crime" is an important principle of retributive justice. It means that the severity of a penalty for wrongdoing should be reasonable and proportionate to the severity of the crimes. Here, it is.

The defendant's motion for a further reduction from his sentence of 282 months is **DENIED.**

**IT IS SO ORDERED**.

DATED: June 15, 2015

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge